IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **REBECCA CARTEE-HARING** <br><br> v. <br><br> **CENTRAL BUCKS SCHOOL DISTRICT** | **CIVIL ACTION NO. 20-1995** |
| **DAWN MARINELLO,** <br> *individually and on behalf of similarly situated female employees,* <br><br> v. <br><br> **CENTRAL BUCKS SCHOOL DISTRICT** | **CIVIL ACTION NO. 21-2587** |

<u>**MEMORANDUM RE: PLAINTIFF REBECCA CARTEE-HARING'S MOTION FOR PARTIAL SUMMARY JUDGMENT**</u>

**Baylson, J.**                                                                                                                                              **June 27, 2022**

Plaintiff Rebecca Cartee-Haring, in her individual capacity, seeks summary judgment with respect to her claim against Defendant Central Bucks School District ("District") pursuant to the Equal Pay Act, 29 U.S.C. § 206(d)(1). <u>See</u> Motion for Partial Summary Judgment (No. 20-1995, ECF 62). She claims that the District violated the Equal Pay Act by compensating her less than its male teachers for equal, "if not more demanding," work. Third Am. Compl. (ECF 26) ¶¶ 117-23. For the following reasons, the Motion will be denied.

**I.     Factual Background[1]**

Since August 27, 2007, the District has employed Cartee-Haring as a fulltime high school

---

[1] Unless otherwise indicated, all facts are derived from Plaintiff's Statement of Undisputed Facts (ECF 62) ("Pl.'s SUF"), in the light most favorable to Defendant as the non-moving party, or from Defendant's related response and counterstatement of undisputed facts (ECF 63) ("Def's Resp. to Pl.'s SUF").

1

English teacher. See Pl.'s SUF ¶¶ 3, 11. Prior to her employment with the District, Plaintiff taught for nine years in Pennsylvania public schools. Id. at ¶ 13. She has a bachelor's degree in English, with honors, from Rutgers University and a master's degree in English Education from Rutgers University Graduate School of Education. Id. at ¶ 12.

### A. The District's Salary Schedules

The District employs Salary Schedules to determine the salary of its fulltime faculty members. Id. at ¶ 4. The Salary Schedules consist of two criteria: (1) "step" and (2) "educational level." Id. at ¶ 5.

"Step" placement, according to Cartee-Haring, "has to do with the years of related teaching experience an individual has for purposes of placement on the Salary Schedules." Id. at ¶ 6. "[A] teacher's status as a coach has nothing to do with Step placement under the Salary Schedules," and "coaches are compensated based on a different Salary Schedule for their service as a coach." Id. at ¶¶ 9-10. The District agrees with Cartee-Haring that a teacher's "step" placement is related to years of teaching experience, however it counters that "step" placement "does not necessarily equal years of teaching experience." Def's Resp. to Pl.'s SUF ¶ 6. And although the District recognizes that "teachers are not given credit toward step placement for their athletic coaching experience" and that coaches are compensated for their service as coaches on a different Salary Schedule, it maintains that "teachers joining the [D]istrict are sometimes given credit for more of their prior teaching experience based on having skills that are difficult to find. . . . [For example,] the ability to run a successful athletic program[.]" Id. at ¶¶ 9-10.

The second placement criterion depends on the teacher's level of education. Pl.'s SUF ¶ 7. For example, a teacher will be placed at a "educational level" corresponding to "whether the teacher has a Bachelor's Degree, a Bachelor's Degree plus 24 post-graduate credits, a Master['s] Degree plus 15 credits toward a doctorate degree, and a Master['s] Degree plus 30 credits toward

a doctorate degree." Id.

### B. Cartee-Haring's Compensation

According to Cartee-Haring, upon her hiring in 2007, her annual salary should have been $66,650 under the District's then-applicable Salary Schedule, given she was in entering her tenth year of teaching ("Step J") and had a master's degree. Pl.'s SUF ¶¶ 15-16. Instead, she contends that the District placed her at "Step E" with a salary of $54,100, "as if she were only in her fifth year of teaching." Id. at ¶ 17. She maintains that the then-Assistant Superintendent of the District, Nancy Silvious, told her that "it was the policy of the District to never give teachers credit for their prior teaching experience for purposes of placement on the Salary Schedules" and that her placement at "Step E" was "doing her a favor." Id. at ¶ 19. For the 2008-2009 school year, she states that she was placed on the Master's Degree plus 15 credits column of the Salary Schedule, as she had obtained fifteen additional post-graduate credits, but the District failed to credit her salary to correspond with this new placement. Id. at ¶¶ 20-21

Although the District states that Cartee-Haring "is on the highest step of the salary schedule," Def's Resp. to Pl.'s SUF ¶ 56, it does not dispute that Cartee-Haring was placed on "Step E" for the 2007-2008 school year at a salary of $54,100, see id. at ¶ 17. However, the District maintains that Cartee-Haring should not have been placed above "Step E" because "[t]eachers transferring from other districts are only placed up to Step E even when they have more than four years of prior experience, except in special circumstances." Id. According to the District, although its administrative procedures as to Step placement have changed several times in the past 30 years, its current policy authorizes its Director of Human Resources to "give teachers credit for up to four years of prior teaching experience, resulting in placements up to Step 5." Id. at ¶¶ 57-58.[2] "Any

---

[2]   Beginning with the 2010-2011 school year, the Steps on the Salary Schedules were numbered 1-15, whereas previously they had been labelled A-O. See Pl.'s SUF, Ex. A.

recommendations for placement above Step 5—whether made by the Human Resources office, a school principal, or otherwise—must be approved by the Superintendent, Assistant Superintendent, or the Director of Pupil Services." Id. at ¶ 59. Reasons for such approvals of placement above "Step 5" include: (1) "attracting teachers with hard-to-find certifications," such as the specialized certifications required of "business teachers, foreign language teachers, mathematics teachers, guidance counselors, industrial technology teachers, and speech therapists;" (2) "filling a critical need of the District"; (3) "filling positions on short notice"; and (4) "enticing sought-after candidates to join [the District]." Id. at ¶¶ 60-61. The District also denies that Nancy Silvious ever made a statement to Cartee-Haring concerning her placement at "Step E." Id. at ¶ 19.

### C. Compensation of Other Teachers

#### 1. Examples of Female Teachers

Cartee-Haring identifies two women, Erica Penn and Taralyn Doris, who were also hired by the District, at Step 1, as fulltime teachers and were not accurately credited for their prior teaching experience for purposes of their Step placement. Pl.'s SUF ¶¶ 50-55. As to Ms. Penn, the District states she was hired at Step 1, in accordance with its then-applicable administrative procedure, because it had no critical need for English teachers at the time. Def's Resp. to Pl.'s SUF ¶¶ 50-52. As to Ms. Doris, the District counters that Step 1 placement was proper because Ms. Doris was hired as a long-term substitute, and "[a]ll teachers hired solely as long-term substitutes are placed at Step 1 regardless of prior experience." Id. at ¶¶ 53-55.

#### 2. Examples of Male Teachers

Cartee-Haring lists eight male teachers for whom the District's Salary Schedules applied: (1) John Donnelly, (2) Stuart Kesilman, (3) David Mussari, (4) Edward Protzman, (5) Joseph Shousky, (6) Walter Sandstrom, (7) James Achuff, and (8) Angelo Menta. Pl.'s SUF ¶¶ 22-49.

### i. John Donnelly

When the District hired John Donnelly as a fulltime teacher, he had fourteen years of prior teaching experience outside of the District and was placed at Step 15 of the Salary Schedule. See Pl.'s SUF ¶¶ 22-23; Def's Resp. to Pl.'s SUF ¶¶ 22-23. He was also credited with having a master's degree plus 30 additional post-graduate, master's-level academic credits. Pl.'s SUF ¶¶ 23, 28; Def's Resp. to Pl.'s SUF ¶ 23, 28. Additionally, the District paid Mr. Donnelly a separate salary for his duties as football coach. Pl.'s SUF ¶ 26; Def's Resp. to Pl.'s SUF ¶ 26.

According to Cartee-Haring, Mr. Donnelly was given full credit for all his prior teaching experience "because he was needed as a football coach," "despite a teacher's status as a coach [having] nothing to do with a teacher's Step placement under the teach Salary Schedules." Pl.'s SUF ¶¶ 25, 27. Cartee-Haring also states that Mr. Donnelly did not have the requisite 30 post-graduate credits to qualify for his placement at Step 15. Id. at ¶ 29.

The District counters that, although it does not give teachers credit toward Step placement for their coaching ability, teachers with prior experience and the "ability to run a successful athletic program," like Mr. Donnelly, have hard-to-find skills that warrant additional credit. Def's Resp. to Pl.'s SUF ¶¶ 25, 27. The District also denies crediting Mr. Donnelly for more academic credits than he had. Id. at ¶ 29; Resp. 6, n.1.

### ii. Stuart Kesilman

Cartee-Haring states Stuart Kesilman had no prior teaching experience when the District hired him as a fulltime teacher and placed him at Step C on the Salary Schedule. Pl's SUF ¶¶ 30-31. The District agrees that Mr. Kesilman started at Step C but maintains that he had six years of prior teaching experience. Def's Resp. to Pl.'s SUF ¶ 31 (citing Ex. E).

5

### iii. David Mussari

According to Cartee-Haring, David Mussari did not have any teaching experience when the District hired him as a fulltime teacher and placed him at Step C of the Salary Schedule. Pl.'s SUF ¶¶ 32-34. The District agrees Mr. Mussari started at Step C but maintains that he had four years of prior experience as an art teacher. Def's Resp. to Pl.'s SUF ¶¶ 33-34 (citing Ex. F).

### iv. Edward Protzman

Edward Protzman had seven years of teaching experience and one year of experience as a program coordinator prior to being hired by the District as a fulltime teacher. Pl.'s SUF ¶¶ 35-38. According to Cartee-Haring, the District credited the entirety of his prior experience and placed him at Step G. Id. at ¶ 38. The District acknowledges that Mr. Protzman started at Step G, however, it denies that he was credited a full eight years of prior experience as a teacher and program coordinator. Def's Resp. to Pl.'s SUF ¶ 38. Additionally, the District states that they hired Mr. Protzman at Step G because of the District's critical need for instrumental music teachers. Id.

### v. Joseph Shousky

Cartee-Haring maintains that the District hired Joseph Shousky, a fulltime teacher, at Step F, as if he had five years of prior teaching experience, despite him having only two years of experience teaching grades K through 12. Pl.'s SUF ¶ 39-41; see also id. at ¶ 40, n.3 (explaining Mr. Shousky had experience teaching undergraduates but that the District does not credit that experience for Step placement purposes). According to the District, Mr. Shousky was placed at Step F, despite his two years of prior experience, because the District had a critical need for physics teachers. Def's Resp. to Pl.'s SUF ¶ 41.

6

### vi. Walter Sandstrom

According to Cartee-Haring, when the District hired Walter Sandstrom as a fulltime guidance counselor, he had three years of prior experience. Pl.'s SUF ¶¶ 42-43. She states the District placed Mr. Sandstrom at Step F on the Salary Schedule, crediting him with 5 years of prior experience. Id. at ¶ 44. The District counters that Mr. Sandstrom's placement was appropriate because there was a critical need for guidance counselors. Def's Resp. to Pl.'s SUF ¶ 44.

### vii. James Achuff

Cartee-Haring states that James Achuff had five years of prior teaching experience when the District hired him as a fulltime teacher. Pl.'s SUF ¶¶ 45-46. She maintains the District placed him at Step G of the Salary Schedule, crediting him not only for his five years of prior experience but also for one additional year. Id. at ¶ 47. The District states Mr. Achuff was a former District teacher who returned to the District after a separation. Def's Resp. to Pl.'s SUF ¶ 47. Because "[f]ormer [District] teachers returning to the [District] get one-to-one credit for each year they taught in the District," his Step placement reflected his more than five years of prior teaching experience within the District. Id. at ¶¶ 46-47 & n.2. Furthermore, the District states that Step G was appropriate because the additional Step credit was approved by the assistant superintendent. Id. at ¶ 47.

### viii. Angelo Menta

According to Cartee-Haring, Angelo Menta was hired as a fulltime teacher at Step 2, despite the District not having produced any documents suggesting that he had prior teaching experience. Pl.'s SUF ¶ 48-49. The District agrees that Mr. Menta was hired at Step 2 and "believes that Mr. Menta had prior teaching experience, but that documentation of his experience was simply misplaced." Def's Resp. to Pl.'s SUF ¶¶ 48-49.

7

**II.     Procedural History**

Cartee-Haring filed the instant action on April 22, 2020. See Compl. (ECF 1). Pursuant to the operative Third Amended Complaint, filed November 11, 2020, Cartee-Haring brings four claims against the District: (1) violations of the Equal Pay Act, 29 U.S.C. § 206(d)(1) (Count I), (2) gender discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. ¶ 2000e, et seq. (Count II), (3) age discrimination in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621, et seq. (Count III), and (4) disability discrimination in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 (Count IV). See Third Am. Compl. ¶¶ 117-130. Cartee-Haring, in her individual capacity, moved for partial summary judgment as to her Equal Pay Act claim (Count I) on April 14, 2022. See Mot. (ECF 62). The District responded in opposition on April 28, 2022. See Resp. (ECF 63).[3]

---

[3]     On November 24, 2021, the Court consolidated this case with Marinello v. Central Bucks School District, No. 21-2587 for all purposes except for trial. See Mem. & Order (ECF 54 & 55). On February 28, 2022, Marinello, individually and on behalf of similarly situated female employees, moved for "final certification, or in the alternative, conditional certification, of her collective action under the Equal Pay Act . . . and, pursuant to Fed. R. Civ. P. 23, for certification of the putative class of plaintiffs for claims under Title VII . . . and the Pennsylvania Human Relations Act[.]" See Marinello Mot. for Certification (No. 21-2587, ECF 27). In her motion, Marinello identifies Cartee-Haring as a putative opt-in plaintiff, arguing Cartee-Haring is another female teacher employed by the District who "has been treated less favorably than [her] male counterparts with respect to compensation." See id. at 7, 10-11.

On May 2, 2022, the Court ordered Cartee-Haring and Marinello to inform the court how they intend to proceed on Cartee-Haring's Motion for Partial Summary Judgment and Marinello's Motion for Certification in light of the Court's previous consolidation order. See Order (ECF 65). The parties requested that the Court stay Cartee-Haring's Motion pending resolution of Marinello's Motion. See Letters, dated May 5, 2022 (ECF 66 & 67). On May 11, 2022, the Court denied the request to stay and ordered oral argument on Marinello's Motion on June 14, 2022. See Order (ECF 69). Following oral argument, the Court ordered an evidentiary hearing be held on the issues of whether the Court should certify a collective action and/or a class action. See Order (ECF 72).

**III.    Legal Standard**

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is "genuine" when "a reasonable jury could return a verdict for the nonmoving party." Id. At summary judgment, the Court's role is "'to determine whether there is a genuine issue for trial,' it is 'not . . . to weigh the evidence and determine the truth of the matter.'" Peroza-Benitez v. Smith, 994 F.3d 157, 164 (3d Cir. 2021) (quoting Baloga v. Pittston Area Sch. Dist., 927 F.3d 742, 752 (3d Cir. 2019)). The Court should grant summary judgment only if, "constru[ing] all facts and inferences in favor of the nonmoving party," Santini v. Fuentes, 795 F.3d 410, 419 (3d Cir. 2015), "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

**IV.    Discussion**

The Equal Pay Act prohibits an employer from paying male and female employees unequal wages for "equal work." See 29 U.S.C. § 206(d)(1). Claims arising under the Equal Pay Act follow a "two-step burden-shifting paradigm." Stanziale v. Jargowsky, 200 F.3d 101, 107 (3d Cir. 2000). First, the plaintiff "must establish a prima facie case by demonstrating that employees of the opposite sex were paid differently for performing 'equal work'—work of substantially equal skill, effort and responsibility, under similar working conditions." Id. (citing E.E.O.C. v. Del. Dept. of Health and Soc. Servs., 865 F.2d 1408, 1413-14 (3d Cir.1989)). "The burden of persuasion then shifts to the employer to demonstrate the applicability of one of the four affirmative defenses specific in the Act." Id. (citing Corning Glass Works v. Brennan, 417 U.S. 188, 196 (1974)); see § 206(d)(1) (listing the four affirmative defenses as: (1) a seniority system,

(2) a merit system, (3) a system which measures earnings by quantity or quality of production, or (4) a differential based on any factor other than sex).

Cartee-Haring seeks summary judgment on the ground that the District is "unable to prove the applicability of any of the four affirmative defenses under the Act." Mot. 6. She reasons that the District, when determining her placement on the Salary Schedule as a fulltime teacher, failed to give her credit for "all of her years of prior teaching experience" and for a higher academic level than what she had achieved. Id. She argues, therefore, that the District's actions as to her compensation contrasted with how it determined compensation for her male counterparts, to include John Donnelly, Stuart Kesilman, Davis Mussari, Edward Protzman, Joseph Shousky, Walter Sandstrom, James Achuff, and Angelo Menta. Id.

Cartee-Haring's argument relies on a misstatement of the summary judgment standard. For an employer to prevail at summary judgment on an Equal Pay Act claim, it must prove at least one affirmative defense "so clearly that no rational jury could find to the contrary," Stanziale, 200 F.3d at 107, and it "must produce sufficient evidence such that no rational jury could conclude that the proffered reasons actually motivated the wage disparity of which the plaintiff complains," id. at 108. However, Cartee-Haring is the moving party here, and, as the District recognizes, the standard for defeating an employee's motion for summary judgment on a claim under the Act "requires only that [the defendant] point to record evidence that creates a genuine issue of material fact as to whether factors other than sex explain the pay differential." Hersh v. Mfrs. & Traders Tr. Co., No. 14-6709, 2016 WL 3059389, at *12 (E.D. Pa. May 31, 2016) (Padova, J.); accord Barthelemy v. Moon Area Sch. Dist., No. 16-542, 2020 WL 1899149, at *18 (W.D. Pa. Apr. 16, 2020) (discussing Day v. Bethlehem Ctr. Sch. Dist., No. 07-159, 2008 WL 2036903, at *8 (W.D. Pa. May 9, 2008)).

10

The District has satisfied that standard. The District points to numerous factual disputes concerning the "hybrid seniority/merit system" that it uses to determine compensation. Resp. 5-7. For example, the District argues that this system accounts for "most" of the pay differentials between its teachers, given that teachers will be placed at a different Step depending on their years of prior teaching experience and a different column depending on their level of education. Id. at 6. Relying on Mr. Donnelly, the District explains that his difference in pay, compared to Cartee-Haring, is explained by his higher education level and years of prior experience as a teacher. Id. The District also explains it takes factors other than sex into account when deciding a teacher's Step placement, such as whether the teacher had a hard-to-find certification, was a sought-after candidate, or was filling a critical need or an open position on short notice. Id. at 7. Cartee-Haring disputes the facts underlying Mr. Donnelly's placement on the Salary Schedule, arguing the District credited him higher placement than his background and qualifications mandated. See Mot. 6. Yet taking these facts in the light most favorable to the District, as the Court must do at summary judgment, there are genuine issues of material fact as to the use and application of the District's "hybrid seniority/merit system" to determine Mr. Donnelly's compensation that preclude summary judgment. There are similar factual disputes concerning the District's determination of compensation for the remaining seven men that Cartee-Haring relies upon in her motion. See supra Section II (listing the seven men and noting the factual disputes). Therefore, the Court denies summary judgment.

V.   **Conclusion**

For the foregoing reasons, Cartee-Haring's Motion for Partial Summary Judgment is denied. An appropriate order follows.

O:\CIVIL 20\20-1995 Cartee-Haring v Central Bucks Sch\20cv1995 Memo re. Summary Judgment.docx