IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| REBECCA CARTEE-HARING, | : | |
| | : | |
| Plaintiff, | : | No. 2:20-cv-01995-MMB |
| v. | : | |
| | : | |
| CENTRAL BUCKS SCHOOL DISTRICT, | : | |
| | : | |
| Defendant. | : | |
| DAWN MARINELLO, individually and on behalf of similarly situated female employees, | : | |
| | : | |
| Plaintiff, | : | No. 2:21-cv-02587-MMB |
| v. | : | |
| | : | |
| CENTRAL BUCKS SCHOOL DISTRICT, | : | |
| | : | |
| Defendant. | : | |

**DEFENDANT'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT OR, IN THE ALTERNATIVE, FOR A NEW TRIAL**

Defendant, the Central Bucks School District ("CBSD" or the "School District") hereby files this Reply Brief in support of their Motion for Judgment Notwithstanding the Verdicts or for a New Trial [ECF 470] (the "Motion") to address the arguments raised by Plaintiffs in their Memorandum of Law in Opposition to Defendant's Motion for Judgment Notwithstanding the Verdicts or for a New Trial [ECF 477] (the "Response").

**I.  ARGUMENT**

    **A.  Judgment Should Be Granted in Favor of the School District Because Plaintiffs Failed to Establish a *Prima Facie* Case**

The Plaintiffs claim that they established a *prima facie* case of a violation of the federal Equal Pay Act ("EPA"), by allegedly showing that Plaintiffs held jobs with substantially equal skills, effort, and responsibility to those of the comparators, and that the comparators were paid more. Response, pp. 1-5. However, the Plaintiffs' comparisons of the jobs of the Plaintiff English

1

teachers and their social studies teacher comparators were on a very general level that courts have deemed not to meet the EPA standard. Meanwhile, the purported evidence that the comparators were paid more than the Plaintiffs was inadmissible hearsay that the School District was unable to refute due to sanctions that were issued arbitrarily.

### 1. Plaintiffs did not show equal skill, effort, and responsibility

At trial and again in the Response, Plaintiffs recited *ad nauseum* the skills, effort, and responsibility common to all teachers in the School District. Response, pp. 3-5. Yet the skills cited – *e.g.*, preparing lesson plans, calculating grades, and giving students feedback – are common not only among CBSD teachers, but arguably all teachers across the nation and around the world. In *Spencer v. Va. State Univ.*, 919 F.3d 199, 204 (4th Cir. 2019), the Fourth Circuit rejected such generalizations.

> Equality under the Act is a demanding threshold requirement. It requires a comparator to have performed work "virtually identical" (or the apparent synonym, "substantially equal") to the plaintiffs in skill, effort, and responsibility. Similarity of work is not enough; the Act explicitly distinguishes between the work itself (which must be "equal") and the conditions of work (which need only be "similar"). The Act does not provide courts with a way of evaluating whether distinct work might have "comparable" value to the work the plaintiff performed. Instead, the Act's inference of discrimination may arise only when the comparator's work is equal to the plaintiff's.
>
> In alleging this necessary equality, a plaintiff may not rely on broad generalizations at a high level of abstraction. But Spencer attempts just such an impermissibly general comparison. In Spencer's view, all University professors perform equal work because they all perform the same essential tasks: preparing syllabi and lessons, instructing students, tracking student progress, managing the classroom, providing feedback, and inputting grades. The performance of these tasks, Spencer posits, requires the same skills: studying, preparing, presenting, discussing, and so forth. But these tasks and skills are shared by middle-school teachers and law-school professors, pre-algebra teachers and biomedical-engineering professors.

*Spencer*, 919 F.3d at 203-04 (affirming summary judgment where plaintiff's job skills, effort, and responsibility were not equal to those of her comparators).

In this case, the Plaintiffs were secondary school English teachers. The comparators were secondary school social studies teachers.[1] As social studies teachers, comparators John Donnelly and Malcolm Mosley possess content area knowledge that Plaintiffs lack. Conversely, the comparators would be unable to properly teach the English classes taught by the Plaintiffs.

Plaintiffs claim that "[t]here is ZERO evidence or reason to think that Donnelly or Mosely exercised different skill, responsibility, and effort simply because they taught Social Studies as opposed to English like Plaintiffs." Response, p. 5 (emphasis in original). However, the School District presented unrefuted evidence that: (a) teachers must attend colleges or universities approved by the Pennsylvania Department of Education and be specially trained to teach the content the content for which they were certified, May 5 (Part 2) Transcr., 44:1-5, 106:7-25; May 6 Transcr., 24:6-25:15, 69:25-70:23; (b) that the curriculums taught by the Plaintiffs and the comparators are different, May 5 (Part 2) Transcr., 45:2-19, 109:2-11; May 6 Transcr., 79:1-16.; (c) that the content knowledge is different. May 5 (Part 2) Transcr., 107:13-109:25; May 6 Transcr., 68:6-15; and (d) that the Plaintiffs are legally prohibited from teaching social studies courses because they have not received the required training from an approved college or university in the content area certification. May 6 Transcr., 24:23-25:15, 185:24-186:14.

Plaintiffs failed to show equal skill, effort, and responsibility such as to make out a *prima facie* case. Accordingly, the District's motion must be granted.

### 2. Plaintiffs presented no competent evidence of a wage differential

Plaintiffs allege they "introduced unrebutted evidence" that they were paid less than their comparators. Yet the only evidence presented to prove a pay disparity was two summaries they

---

[1] In addition, John Donnelly had the additional duties of a head football coach. Because Donnelly was hired to perform both teaching and coaching, and the Plaintiffs were not, it must be found as a matter of law that the Plaintiffs did not have jobs with equal skills, effort, and responsibility as Donnelly's job.

prepared themselves, Exhibits PX-12 and PX-13 (later replaced by Exhibits PX-14 and PX-15). However, those summaries were inadmissible hearsay and were not offered in accordance with either Fed. R. Evid. 1006 or 803(8). The Defendant objected to the admission of those exhibits. *See* Defendant's Motion in Limine to Preclude Argument and Testimony Regarding Plaintiffs' Exhibits 1A, 1B, 11, 12, and 13 [ECF 439]; May 5 (Part 2) Transcr., 130:23-131:10. As described more fully in the Memorandum of Law supporting the Motion, the Plaintiffs' exhibits constituted inadmissible hearsay not meeting any of the hearsay exceptions, and also failing to meet the requirements of Rule 1006 concerning summaries. *See* Memorandum [ECF 470-1], pp. 6-8. Plaintiffs further argue that wage information for Donnelly and Mosley has always been in the School District's possession and was provided to the Pennsylvania Department of Revenue ("PDE"). The School District does not deny that it has the relevant wage information in its possession. However, CBSD does argue that the information as presented on PDE's web site was inaccurate in some cases. For this reason as well, Plaintiffs failed to make out a *prima facie* case.

      **B.**     **Plaintiffs' Arguments Against a New Trial All Fail**

As explained in the Motion, in determining whether to grant a new trial based on erroneous evidentiary rulings, a court employs the two-step inquiry governing other Rule 59(a) motions based on errors of law: it "must first determine whether an error was made in the course of trial, and then it must determine 'whether that error was so prejudicial that refusal to grant a new trial would be inconsistent with substantial justice.'" *Price v. Trans Union, L.L.C.*, 839 F. Supp. 2d 785, 792 (E.D. Pa. 2012) (*quoting Farra v. Stanley-Bostitch, Inc.*, 838 F. Supp. 1021, 1026 (E.D. Pa. 1993). These standards have been met, and a new trial should be ordered.

      **1.**     **Evidence of average wages of comparators**

Plaintiffs claim that they are not required to identify more than one comparator for each Plaintiff. Response, pp. 5-7. However, Plaintiffs cite no Third Circuit decision supporting their

position. Meanwhile, the Third Circuit's Model Jury Instructions clearly support the School District's position that in determining EPA damages, a plaintiff's wages must be compared to the average of all workers performing jobs of equal skill, effort, and responsibility.

The School District has consistently asserted that the Model Jury Instructions require averaging the wages of comparators where there are multiple comparators. Plaintiffs allege that this Court rejected that argument. Response, p. 7 (*citing* ECF 429, 437). That is incorrect. In the Pre-Second Trial Order [ECF 429], the Court stated:

> As this Court has indicated several times already, damages for EPA violations when Plaintiffs are compared to more than one male employee are calculated by "compensating [Plaintiffs] for the difference between what she was paid (in both wages and benefits) and the average amount of what [the comparators] were paid[.]" Third Circuit Model Jury Instructions, 11.3.2–3.

*Id.*, p. 2. Instead the Court took issue with CBSD's assertion that comparing the Plaintiffs' salaries to all of their comparators would result in no damages awarded as Plaintiffs were compensated at a higher rate than the average paid to all male CBSD teachers, male secondary English teachers, and male secondary social studies teachers. Specifically, the Court rejected the School District's position for relying heavily on the Ninth Circuit's decision in *Hein v. Oregon College of Education*, 718 F.2d 910 (9th Cir. 1983). *See* ECF 429, p. 2 ("*Hein*'s rule has not been adopted in the Third Circuit."). The problem with this Court's rejection of the *Hein* theory of EPA damages was explained by the Second Circuit in a case cited by Plaintiffs on this issue, *Lavin-McEleney v. Marist College*, 238 F.3d 476, 480 (2d Cir. 2001)

> The problem with comparing plaintiff's pay only to that of a single male employee is that it may create the impression of an Equal Pay Act violation where no widespread gender discrimination exists. Moreover, in the calculation of damages, such a comparison may either grant the plaintiff a windfall where the male comparator is paid particularly well, or improperly limit her recovery where the male comparator, though better compensated than she, is paid less than the typical man of substantially equal skill, effort, and responsibility. On similar reasoning, the Ninth Circuit Court of Appeals has noted that where multiple comparators exist,

>the plaintiff is not permitted simply to select the best-compensated male to establish her case.

*Id.* at 481-82. Indeed, in *Lavin-McEleney*, although the Plaintiff asserted only one comparator, expert witnesses for both sides calculated damages by "extrapolating from the pool of the entire faculty at Marist to establish a sufficiently large statistical sample size." *Id.* at 481. Accordingly, the Court's rejection of this accepted damages theory merits a new trial.

### 2. Evidence of true substitutes was improperly precluded

Plaintiffs claim that the Court did not err when it precluded evidence of 53 male CBSD teachers hired as "true substitutes" hired to fill temporary teaching vacancies, and placed on Step 1 regardless of their actual teaching experience. Response, pp. 7-8. Plaintiffs argue that evidence of male teachers other than the comparators was irrelevant. However, evidence of the true substitutes was important in this trial not only because it shows that many men were arguably treated exactly the same as Dawn Marinello by being placed on Step 1 as a true substitute, but more importantly because it provided an explanation how the wage differential between Marinello and her comparators was based on a reason other than sex, thereby proving the School District's affirmative defense. And while CBSD was able to present testimony regarding true substitutes (May 6 Transcr., 188:5-25, 189:1-25, 190:1-12, 191:1-19), the exclusion of the exhibit listing the male true substitutes prevented the jury from seeing that both men and women were hired as true substitutes. This likely contributed to the jury's finding that Marinello's pay disparity was not the result of a factor other than sex.

### 3. Jury instructions on skill, effort, and responsibility

Plaintiffs argue that the Court did not err in its instructions on skill, effort, and responsibility, or if it did, any error was harmless. Response, p. 8. At issue is the Court's instruction that the word "content" does not appear in the EPA, and then adding "If you conclude

6

that content is not there, then you may consider that the Plaintiff has sustained their burden of showing that the skill, effort, and responsibility for them was equal to what the male teachers were doing. May 7 Transcr., 79:22-80:12. Jurors likely took this to mean that because the word "content" does not appear in the EPA, they were required to find that the Plaintiff had proved that Plaintiffs and the comparators performed jobs of equal skill, effort, and responsibility.

Remarkably, Plaintiffs allege that "there was absolutely no evidence presented establishing that the content of Social Studies courses as opposed to English courses rendered teaching Social Studies as requiring different 'skill, effort and responsibility' than teaching English." Yet the School District presented evidence that content knowledge was the critical skill that made English not "substantially equal" to social studies, and the School District argued this point to the jury. May 7 Transcr., 57:1-62:23. However, the Court refused to provide the proposed instructions that directly addressed those points. *See* Proposed Instructions 18, 20, 31, 32, 48, 65, 100, 101, 103, 104, 107.

A new trial is warranted if jury instructions, taken as a whole, "fail to 'fairly and adequately' present the issues in the case without confusing or misleading the jury." *Donlin v. Philips Lighting N. Am. Corp.*, 581 F.3d 73, 79 (3d Cir. 2009) (*quoting United States v. Ellis*, 156 F.3d 493, 498 n.7 (3d Cir. 1998)). In this case, the Court's decision not to give two of the Defendant's proposed jury instructions – 103 and 107 – likely misled the jury, requiring a new trial.[2, 3]

---

[2] Instruction 101 reads: "Depending on the evidence presented, the proper comparator might be another teacher within the same certification class. In some circumstances, plaintiffs in one certification class claiming age or sex discrimination may not properly be able to use a teacher in another certification class as a comparator." (*citing Heller v. Elizabeth Forward Sch. Dist.*, 182 F. App'x 91, 95 (3d Cir. 2006)).

[3] Instruction 107 reads: "Equality under the Equal Pay Act is a demanding threshold requirement. It requires a comparator to have performed work virtually identical (or the apparent synonym, substantially equal) to the plaintiff's in skill, effort, and responsibility. Similarity of work is not enough." (*citing Spencer v. Va. State Univ.*, 919 F.3d 199, 202 (4th Cir. 2019).

### 4. Instructions Regarding Affirmative Defenses

Plaintiffs dispute the School District's contention that the Court erred in its jury instructions on "a factor other than sex," noting that the Court did provide an instruction on the topic. Response, pp. 8-9. However, Plaintiffs conveniently overlook the deficiency in the instruction that was given and the subsequent confusing *Allen* instruction. The Model Jury Instruction states:

> If you find that a plaintiff has proved each of the elements that she must establish in support of her claim under the Equal Pay Act, you must then consider defendant's defenses. The Defendant contends that the difference in pay between the two jobs was the result of factors other than sex. Specifically, the defendant claims that the difference in pay is attributable to one or more factors unrelated to sex. For example, Defendant contends that any disparity in pay is attributable to things like different experience and training, that particular position which needed to be filled, a unique or critical need, whether the position was difficult to fill, different dates of hire, different wage scales in place at the time and the like. To establish that this defense, the defendant must prove that the plaintiff's sex played no part in the difference in wages.
> The Plaintiffs contends that defendant's explanation for the difference in pay is only a pretext, or excuse, for paying higher wages to men for equal work. Remember that the plaintiffs do not have to prove that the Defendant intended to discriminate. However, evidence of intent to discriminate may be considered in determining whether the Defendant's explanation is valid or instead is a cover-up for paying higher wages to men for equal work.
> If you find the Defendant has proved by a preponderance of the evidence that the difference in pay was the result of the factors identified by the Defendant, your verdict must be for the Defendant. However, if you determine that the Defendant has failed to prove that the difference in pay was caused by this factor other than sex, you must decide in favor of each plaintiff as applicable.
> You must make this determination for each of the plaintiffs and each of the comparators.

3d Cir. Model Jury Instruction 11.2.4. In this case, the Court initially failed to provide any instruction on the affirmative defense. After being advised of the oversight (May 7, Transcr., pp. 101-102), the Court instructed jurors:

> So, also under the statute of the Equal Pay Act, the Defendant is allowed to introduce evidence and to contend that if the salary differential was due to any factor other than sex, you may consider that. That's the language, any factor other than sex.

May 7 Transcr., 104:12-16. This instruction clearly falls far short of the information provided in the model instruction and may have led to the jury's initial deadlock on the affirmative defense. Accordingly, a new trial is warranted.

### 5. Jury instruction process was prejudicial

Plaintiffs argue that the jury instruction process did not prejudice the School District because CBSD's counsel could have objected to any jury instruction. Response, p. 9. While counsel was able to object to the instructions, counsel could not properly evaluate the instructions given without receiving copies of the instructions in advance. The difficulty evaluating the instructions was compounded by the Court giving two different versions of the instructions – the verbal instructions given and the written instructions provided. *Compare* May 7 Transcr., pp. 76-99 with ECF 468. As noted in the Motion, one court has held that it is reversible error for a Court to tell counsel one thing and then give instructions that are substantially different. *Delano v. Kitch*, 542 F.2d 550, 555 (10th Cir. 1976). Therefore, a new trial is warranted.

### 6. The Court improperly sanctioned the School District

Plaintiffs argue that the Court did not act improperly in sanctioning CBSD for allegedly refusing to calculate damages as instructed by the Court. Response, p. 10. The School District maintains that its calculation of damages – finding that Plaintiffs here were entitled to no award – was correct in light of the Third Circuit Model Jury Instructions that require EPA plaintiffs' wages be compared to an average of all comparators. In any event, the sanction of not being permitted to present evidence contradicting the Plaintiffs' damages evidence was excessively severe.

Fundamental fairness and the established law of the Third Circuit require that a court afford the parties due process by giving them notice and opportunity to be heard before imposing sanctions or awarding damages. *See Jones v. Pittsburgh Nat'l Corp.*, 899 F.2d 1350, 1357 (3d Cir. 1990). "The party against whom sanctions are being considered is entitled to notice of the

9

legal rule on which the sanctions would be based, the reasons for the sanctions, and the form of the potential sanctions." *In re Tutu Wells Contamination Litig.*, 120 F.3d 368, 379 (3d Cir. 1997).

The Third Circuit has held that "the exclusion of critical evidence is an 'extreme' sanction, not normally to be imposed absent a showing of willful deception or 'flagrant disregard' of a court order by the proponent of the evidence." *Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894, 905 (3d Cir. 1977). The Court's sanction in this case was levied despite the fact that the School District and the Court simply differed on how EPA damages are calculated under the applicable legal standards. The Court should have scheduled a hearing before imposing the extreme sanction of precluding evidence on damages. Accordingly, a new trial is required.

### 7.    Admitting the Plaintiffs' summary charts was an error

Plaintiffs next argue that the Court's admission of the Plaintiffs' summary charts – *i.e.*, Exhibits PX-12, PX-13, PX-14, PX-15 – was proper because the Court has "considerable discretion" regarding evidence. Response, p. 11. However, Plaintiffs do not address CBSD's arguments in the Motion that the exhibits were untimely, unauthenticated, failed to meet the requirements under Rule 1006, and constituted hearsay not falling under any exception. Accordingly, the exhibits, including salary information, should have been excluded under either Rule 802, 901, or 1006. More importantly, because these exhibits were the only evidence of a wage disparity offered by Plaintiffs, the inadmissibility of these exhibits requires judgment in favor of the Defendant for Plaintiffs' failure to make out a *prima facie* case.

### 8.    The *Allen* instructions were erroneous and prejudicial

Plaintiffs refute the School District's claim that the Court erred in its instruction to the jury

upon learning the jury was deadlocked.[4]  *See* Response, pp. 11-12.  Plaintiffs go on to say that the Court "properly exercised its discretion in guiding the jury to proper considerations in coming to unanimous verdicts."  *Id.* at p. 12.  The School District had no issue with the Court instructing the jury to continue to deliberate; however, CBSD believes the Court erred by encouraging jurors – who were divided on whether or not the School District had a valid affirmative defense – to find common ground by rejecting the affirmative defense but reducing the damages awarded to Plaintiffs.

Although Plaintiffs assert in the Response that the Court's instructions were proper, Plaintiffs' counsel objected to the Court's instruction at trial, as did defense counsel.  May 7 Transcr., 9:16-22.  Furthermore, Plaintiffs argue in their own Rule 50 motion that Plaintiffs are entitled to damages as described in Exhibits PX-14 and PX-15.  *See* ECF 469, pp. 7-8.  Therefore, it is apparent that the Plaintiffs do not agree with the Court's instruction to the jury that they could reduce damages in order to find consensus.  Accordingly, because all parties dispute the validity of the Court's *Allen* instruction, a new trial is warranted.

### 9. Plaintiffs do not dispute the argument on evidence of Zappa and Burns

In the Memorandum supporting the Motion, the School District argues that the Court improperly admitted evidence regarding CBSD male employees John Zappa and Christopher Burns.  *See* Memorandum [ECF 470-1], pp. 22-24.  Plaintiffs do not address this argument in the Response, apparently conceding the point.  That evidence likely confused and prejudiced the jury,

---

[4]     Plaintiffs state, "The Court's instructions to which CBSD objects are not objectionable. They are not *Allen* instructions but do no more than encourage them to fulfill their duty and remind them of the original instructions."  It is not clear why Plaintiffs believe the Court's statement to jurors was not an *Allen* instruction.  An *Allen* instruction "urg[es] deadlocked jurors to review and reconsider the evidence in the light of the views expressed by other jurors so as to avoid a mistrial."  *United States v. Coulter*, 57 F.4th 1168, 1192 (10th Cir. 2023) (*quoting United States v. LaVallee*, 439 F.3d 670, 689 (10th Cir. 2006)).

meriting a new trial.

### C. Plaintiffs Do Not Effectively Challenge CBSD's Alternative Motions

In the Memorandum supporting the Motion, CBSD argued that the Court should have granted judgment notwithstanding the verdict following the first trial in this matter. ECF 470-1, pp. 26-28. CBSD also renewed its motion to dismiss under Rule 41. *Id.*, p. 28. Plaintiffs urge the Court to deny both motions, arguing only that the School District has not justified the requests. Response, pp. 12-13. The School District encourages the Court to analyze its requests for these alternate motions for all of the reasons set out in the Motion and memorandum. See ECF 470-1, pp. 26-28.

## II. CONCLUSION

For all of the foregoing reasons, Defendant respectfully requests that the Court: (1) grant judgment as a matter of law pursuant to Rule 50(b) and/or Rule 41(b), or, in the alternative, grant a new trial under Rule 59(a).

Respectfully submitted,

Date: July 14, 2025

*/s/ Michael I. Levin*
LEVIN LEGAL GROUP, P.C.
Michael I. Levin, Esquire
David W. Brown, Esquire
1800 Byberry Road, Suite 1301
Huntingdon Valley, PA 19006
(215) 938-6378
mlevin@levinlegalgroup.com
dbrown@levinlegalgroup.com

*Counsel for Defendant,*
*Central Bucks School District*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 14th day of July, 2025, I caused the foregoing Defendant's Reply Brief in Support of Its Motion For Judgment Notwithstanding The Verdict or, in The Alternative, for a New Trial to be filed using the Court's Electronic Case Filing system, and a Notice of Electronic Case Filing was served upon all counsel in accordance with Fed. R. Civ. P. 5(b).

*/s/ David W. Brown*
David W. Brown