IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| REBECCA CARTEE-HARING, | : | No. 2:20-cv-01995-MMB |
| v. | : | |
| CENTRAL BUCKS SCHOOL DISTRICT | : | |
| | | |
| DAWN MARINELLO, individually and on behalf of similarly situated female employees | : | No. 2:21-cv-02587-MMB |
| Plaintiff, | : | |
| v. | : | |
| CENTRAL BUCKS SCHOOL DISTRICT | : | |

**PLAINTIFFS' REPLY MEMORANDUM OF LAW IN SUPPORT OF
THEIR PETITION FOR ATTORNEY'S FEES AND COSTS**

Plaintiffs Rebecca Cartee-Haring and Dawn Marinello, through their undersigned counsel, respectfully submit this Reply Memorandum of Law in Support of their Petition for Attorney's Fees and Costs.

**I.   ARGUMENT**

    **A.   The Attorney's Fees And Costs Sought By Plaintiffs Are Necessary To Make Them Whole.**

In *Eshelman v. Agere Systems, Inc.*, 554 F.3d 426, 440-441 (3d Cir. 2009), the Third Circuit ruled:

> A chief remedial purpose of employment discrimination statutes […] is "to **make persons whole** for injuries suffered on account of unlawful employment discrimination." *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 418, 95 S. Ct. 2362, 45 L. Ed. 2d 280 (1975); *see McKennon v. Nashville Banner Publ'g Co.,* 513 U.S. 352, 358, 115 S. Ct. 879, 130 L. Ed. 2d 852 (1995); *Maxfield v. Sinclair Int'l,* 766 F.2d 788, 796 (3d Cir.1985). Congress armed the courts with broad equitable powers to effectuate this "make whole" remedy. *See* 42 U.S.C. § 2000e-5(g)(1); *Franks v. Bowman Transp. Co., Inc.,* 424 U.S. 747, 764, 96 S. Ct. 1251, 47 L. Ed. 2d 444 (1976); *Albemarle,* 422 U.S. at

> 418, 95 S. Ct. 2362. District courts are granted wide discretion to "locate `a just result'" regarding the parameters of the relief granted in the circumstances of each case. *See Albemarle,* 422 U.S. at 424, 95 S. Ct. 2362 (quoting *Langnes v. Green,* 282 U.S. 531, 541, 51 S. Ct. 243, 75 L. Ed. 520 (1931)); *see also Taxman v. Bd. of Educ. of Piscataway,* 91 F.3d 1547, 1565 (3d Cir. 1996) (en banc).
>
> In exercising its discretion to fashion a remedy, district courts should, *inter alia,* endeavor "to restore the employee to the economic status quo that would exist but for the employer's conduct." *In re Continental Airlines,* 125 F.3d 120, 135 (3d Cir.1997); *see McKennon,* *441 513 U.S. at 362, 115 S. Ct. 879.

*(Emphasis added). See also EEOC v. County of Erie,* 751 F.2d 79 (2d Cir. 1984) ("One of the principal purposes of the Equal Pay Act is to make whole employees who have unlawfully been deprived of wages.") *citing Marshall v. Board of Education*, 470 F.Supp. 517, 519 (D.Md.1979), aff'd, 618 F.2d 101 (4th Cir.1980).

As part of the remedial make-whole scheme of the Equal Pay Act Amendments to the Fair Labor Standards Act, 29 U.S.C. § 216(b) provides "The court in such action [under the Equal Pay Act] shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."[1]

The attorney's fees and costs sought in these cases are predicated on binding contracts between the Plaintiffs and their attorney subject to Pennsylvania law since the contracts were entered into in Pennsylvania and the performance under the contracts was all in Pennsylvania. (*See* Exhibits A and B to Plaintiffs' Petition for Attorney's Fees and Costs). The attorney's fees

---

[1] Defendant argues that Plaintiffs have not "prevailed" to warrant an award of the attorney's fees and costs they owe their attorney. That argument is specious. *See Farrar v. Hobby*, 506 U.S. 103, 111 (1992) (explaining that a plaintiff is a prevailing party when they "obtain an enforceable judgment against the defendant from whom fees are sought"); *Truesdell v. Phila. Hous. Auth*., 290 F.3d 159, 163 (3d Cir. 2002) ("[P]laintiffs may be considered prevailing parties for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit."). As such, a prevailing plaintiff "should recover an award of attorney's fees absent special circumstances." *Truesdell*, 290 F.3d at 163.

sought by the Plaintiffs are those they owe to their attorney pursuant to those contracts. The Pennsylvania Supreme Court has observed:

> "[T]his Court long ago emphasized that `[t]he parties [have] the right to make their own contract, and it is not the function of this Court to re-write it, or to give it a construction in conflict with . . . the accepted and plain meaning of the language used.' *Hagarty v. William Akers, Jr. Co.*, 342 Pa. 236, 20 A.2d 317 (1941)." *Felte v. White*, 451 *51 Pa. at 144, 302 A.2d at 351. "`It is not the province of the court to alter a contract by construction or to make a new contract for the parties; its duty is confined to the interpretation of the one which they have made for themselves, without regard to its wisdom or folly.' [13 C.J. § 485, p. 524]" Moore v. Stevens Coal Co., 315 Pa. 564, 568, 173 A. 661, 662 (1934). In 17A C.J.S. Contracts § 296(3), appears the following:
>
>> The court may not rewrite the contract for the purpose of accomplishing that which, in its opinion, may appear proper, or, on general principles of abstract justice . . . make for [the parties] a better contract than they chose, or saw fit, to make for themselves, or remake a contract, under the guise of construction, because it later appears that a different agreement should have been consummated in the first instance. . . .

*Steuart v. McChesney*, 498 Pa. 45, 50-51, 444 A.2d 659 (1982) (Footnotes omitted.)

The Third Circuit has similarly upheld the sanctity of private contracts. For example, in *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 593 (3d Cir. 2010), the court ruled that, while Fed. R. Civ. P. 23 requires district courts to act as fiduciaries for the absent class members in considering settlement agreements in class actions, that does not vest district courts with the broad powers to intrude upon the parties' bargain.

Here, the parties' bargain is the foundation for their claim for make-whole relief that includes their attorney's fees and costs. Because the Plaintiffs owe their attorney the fees and costs they have sought in these cases pursuant to binding contracts under state law, they should be awarded those fees and costs from the Defendant to make them whole as prescribed by *Eshelman*. Anything less does not make them whole.

### B. The Attorney's Fees Plaintiffs Seek To Make Them Whole Are Reasonable.

Despite the Defendant's protestations, the fees owed by Plaintiffs to their attorney for which they seek to be made whole are reasonable. **Maurice Mitts**, an extremely highly reputed, knowledgeable, accomplished, and experienced Philadelphia attorney with a national litigation practice, has provided a Declaration to assist the Court confirming the fees that the Plaintiffs agreed to pay their lawyer, if and only if they achieved a monetary recovery, are reasonable. After setting forth his credentials and experience, **Mr. Mitts** asserts:

> In my professional opinion, a contingency hourly rate of $2,625 is reasonable under the circumstances of these particular cases in view of (a) the complexity of the Equal Pay Act claims; (b) the risk that the evidence might not ultimately establish the claims in the eyes of a jury and that, therefore, Mr. Mazurek would not be paid anything for the time he expended in these matters and would lose the $200,000+ he paid in costs; (c) the aggressiveness with which the team of lawyers representing the defendant in the cases; (d) the substantial societal benefit at stake in seeking to vindicate women's right to equal pay for equal work; (e) the ongoing risk that the Third Circuit or Supreme Court could yet rule against the plaintiffs on appeal leaving Mr. Mazurek without any fee and at a personal loss of over $200,000; (f) Mr. Mazurek's legal experience, knowledge and skill; and (g) the fact that it took five (5) years for these cases to be worked up, tried and a successful jury verdict obtained.

**Maurice Mitts** Declaration attached as Exhibit L, ¶ 12.

Further, **Mr. Mitts** states:

> Based on my knowledge and experience as a complex commercial litigator and as the head of a boutique litigation form, it is my opinion based on a reasonable level or professional certainty that a contingency hourly rate of $2,625 for a lawyer of Ed Mazurek's experience and abilities is reasonable for these cases. I base this opinion on the complexity, work requirements, the protracted duration of these cases, the risks and uncertainties in litigations of this magnitude in the national legal market, including the greater Philadelphia area.

*Id.* ¶ 13.

Additionally, **Mr. Mitts** explains:

> I often handle complex, protracted and risky cases. In my opinion, *Cartee-Haring v. Central Bucks School District* and *Marinello v. Central Bucks School District* cases are complex, have been protracted litigations and presented very high degrees of risk and

uncertainty. Because of the complexity and risks inherent in these lawsuits, Mitts Law would not have undertaken the representation of the plaintiffs on a contingency fee basis unless the contingency fee were very substantial and the solvency of the defendants assured. Additionally, we would not have borne the costs of the litigations out-of-pocket but would have required the plaintiffs to pay them as we incurred them – which is often an insurmountable impediment for a plaintiff to proceed with such litigation.

Id. ¶ 10.

With respect to the 1,204.3 hours that Plaintiffs' counsel expended in these representations, **Mr. Mitts** states:

> Mr. Mazurek has told me that he spent 1,204.3 hours litigating these cases over the last five (5) years. That comes to an average of 240 per year, which I believe to be exceptionally efficient. Obtaining two jury verdicts in these Equal Pay Act cases expending an average of 240 hours per year is an impressive achievement – indeed many lawyers would have spent far more time litigating such cases. In my opinion, devoting 1,204.3 hours to these cases over 4-5 years and obtaining the favorable jury verdicts is eminently reasonable.

Id. 14.

In addition to Mr. Mitts, highly regarded and deeply experienced Philadelphia employment discrimination attorney, **Sydney Gold**, has also provided a Declaration to assist the Court confirming that the contingency fees that the Plaintiffs agreed to pay their lawyer are reasonable. In his Declaration, **Mr. Gold** sets forth is extensive qualifications for rendering his opinions and then, **Mr. Gold** avers:

> 13. I have reviewed the complaints in the *Cartee-Haring v. Central Bucks School District* and *Marinello v. Central Bucks School District* cases.
>
> 14. Each of those cases involve important civil rights under the Equal Pay Act.
>
> 15. While these cases involved important civil rights, their results were highly uncertain.
>
> 16. Because of the complexity, risks and uncertainties attendant with litigating these cases, and because of the substantial work that these cases would require, my law firm and I would not have undertaken the representation of the plaintiffs unless the plaintiffs were in a position to guarantee payment of our fees on an hourly basis as the matters proceeded, or alternatively, without a significant contingency fee arrangement.

5

17. I understand that the plaintiffs in the *Cartee-Haring* and *Marinello* lawsuits retained Mr. Mazurek to represent them under an agreement through which Mr. Mazurek's contingency fee would be three and a half times the hourly rate of $750 times the number of hours he expends on the matters if, and only if, Mr. Mazurek achieved a monetary recovery on the plaintiffs' behalf. My firm and I would not have undertaken these representations unless the contingency fees were substantially more than the contingency fee rates to which Mr. Mazurek and his clients agreed.

18. Based on my knowledge and experience as an employment law litigator for approximately 40 years, it is my opinion that an hourly rate of $750 for a lawyer of Mr. Mazurek's experience and abilities is not only reasonable, it is low.

19. Also based on my knowledge and experience as an employment law litigator for approximately 40 years, it is my opinion that a multiplier of 3.5 of an hourly rate of $750 is eminently reasonable in view of the complexity, work requirements, risks and uncertainties attendant to litigations of this magnitude.

20. Additionally, Mr. Mazurek sought to vindicate highly important civil rights in these cases.

21. As the United States Court of Appeals for the Ninth Circuit observed, "[a]lthough the [Equal Pay] Act has prohibited sex-based wage discrimination for more than fifty years, the financial exploitation of working women embodied by the gender pay gap continues to be an embarrassing reality of our economy." *Rizo v. Yovino*, 887 F.3d 453, 456 (9th Cir. 2018).

22. In obtaining jury verdicts for both Cartee-Haring and Marinello on their Equal Pay Act claims, Mr. Mazurek achieved a substantial societal benefit in better ensuring that employers will comply with their obligations under the Equal Pay Act.

23. In my professional opinion as a civil rights litigator, this societal benefit is heightened in these cases that are against a public school district that is vested with educating and molding its girl students. That a jury found that the Central Bucks School District discriminated against its teachers because they are women is a tremendous stain on the School District. That the jury and Court are holding the School District accountable for its serious violation of our civil rights laws vests confidence in the School District's girl students that they should not, and cannot, be subjected to gender discrimination by anyone when they enter the workforce, even by someone like the School District that patronizingly holds itself out as looking after their interests.

24. I understand that Mr. Mazurek has stated that he spent 1,204.3 hours litigating these cases for over five (5) years. While I understand that in any litigation, there will be ebbs and flows of the time devoted to it throughout its course, 1,204.3 hours over five years is an average of only 240 hours per year.

25. In my professional opinion, the number of hours that Mr. Mazurek spent on these cases reflects a high level of efficiency and ability on Mr. Mazurek's part and is very reasonable.

**Sydney Gold** Declaration attached as Exhibit M.

Nationally renowned public interest attorney, **Jeremy Heisler**, Co-founder of the national public interest law firm Sanford Heisler Sharp McKnight, LLP, has also submitted a Declaration for the Court's consideration. After explicating his highly accomplished practice, qualifications and experience, **Mr. Heisler** states:

The market for attorney representation is no longer limited to specific cities, states or regions. It is national in scope. Attorneys from eastern cities represent clients not only in the east, but in the north, south, west and mid-west. Conversely, attorneys from western, northern, southern, and midwestern cities represent clients in matters outside their cities, states and regions. Admission to courts pro hac vice enables attorneys effectively and seamlessly to represent clients in states in which they are not admitted to the state bar.

I have reviewed the complaints and docket entries in the *Cartee-Haring v. Central Bucks School District* and *Marinello v. Central Bucks School District* cases.

Because of the complexity, risks and uncertainties associated with litigating these cases, and because of the substantial work and out-of-pocket expense that these cases would require, Sanford Heisler Sharp McKnight would likely not have undertaken the representation of the plaintiffs.

I understand that, after over 5 years of litigating Cartee-Haring and 4 years of litigating Marinello, a jury returned verdicts in favor of both Ms. Cartee-Haring and Ms. Marinello on their Equal Pay Act claims.

Mr. Mazurek accomplished these excellent results as a solo practitioner opposed by multiple lawyers representing the defendant School Districts. One of the firms was Cozen and O'Connor, with 4 attorneys actively participating in the defense of Mr. Mazurek suits.[2] Another opposing law firm utilized 7 lawyers to represent the defendant School Districts.

This was an extraordinary David versus Goliath success story and Mr. Mazurek should be recognized for his superlative victories.

In my professional opinion, the jury verdicts in favor of the plaintiffs were an extraordinary accomplishment for several additional reasons. First, they defy the odds existing at

---

[2] Samples of Cozen & O'Connor's bills for these cases reflecting that at least four (4) attorneys from that firm worked on the case, in addition to the three (3) attorneys of record from the Levin Legal Group, are attached as Exhibit N.

the outset of the cases against recovery considering the complexity, risks and uncertainties of those litigations. Second, the School District waged an extremely aggressive defense throughout the litigations. Third, the jury verdicts vindicate important civil rights of women and thereby confer a substantial societal benefit in advancing the goals of Congress in enacting the Equal Pay Act to overcome the deeply embedded belief in women's inferiority and to eliminate the depressing effects on living standards of reduced wages for female workers and the economic and social consequences which flow from it. This societal benefit is magnified in these cases involving a public school district with female students. It is especially egregious for a public school district that is the steward of female students to discriminate against women teachers based on their gender. The School District implicitly conveyed to its female students through its discriminatory pay practices that no matter how hard they work in school, it is acceptable that they be paid less than their male counterparts for equal work when they enter the job market. The verdicts rendered in these cases send the resounding message, "NOT SO!" The verdicts are reflective of Mr. Mazurek's strong legal abilities and knowledge and tremendous tenacity and commitment to his clients and their cause.

      I understand that Mr. Mazurek paid more than $200,000 in costs associated with both cases out of his own funds.

      Mr. Mazurek invested this substantial sum of money even though success in these discrimination cases was far from assured.

      Mr. Mazurek has informed me that the School District declined to consider settlement throughout the litigations, even after numerous admonishments and efforts by the District Court to encourage the School District to settle the cases.

      Where a defendant refuses to even consider settlement, that drastically increases the risks that plaintiffs may not recover anything in the cases, and that their attorney will not recover for the costs or fees he expends in the cases since, as in these cases, a jury and appellate courts will have to decide their fates.

      I understand that the plaintiffs in the Cartee-Haring and Marinello lawsuits retained Mr. Mazurek to represent them under terms where Mr. Mazurek's regular hourly rate of $750 would be accorded a 3.5 multiplier ($2,625 per hour), if and only if, Mr. Mazurek achieved a monetary recovery on the plaintiffs' behalf.

      Based on my knowledge and experience as an employment law litigator for over 40 years, and as the co-founder and co-vice chairman of a national public interest law firm, it is my opinion that an hourly rate of $2,625 for a lawyer of Mr. Mazurek's experience and abilities, contingent on actually achieving a monetary recovery, is not only reasonable, it is low, for these cases. Mr. Mazurek, or any other lawyer with the courage to undertake these representations, could easily have spent a substantial amount of time and money on these cases, not recovered anything, and not have been entitled to any fee under his contracts with his clients. In fact, given that the School District can appeal the judgments to the Third Circuit and Supreme Court, Mr. Mazurek still faces a significant risk that he will not be paid anything for the work he performed on these cases over the last 5 years and the $200,000+ he invested of his own money.

Based on my knowledge and experience as an employment law litigator for approximately 40 years, and as the Co-Founder and Co-Vice Chairman of a national public interest law firm, it is my opinion that a contingency hourly rate of $2,625 is eminently reasonable in view of the complexity, work requirements, risks and uncertainties attendant to litigations of this magnitude in the legal market of the United States, including but not limited to the greater Philadelphia area.

I understand that Mr. Mazurek has stated that he spent 1,204.3 hours litigating these cases for over five (5) years. In my professional opinion, that reflects a high degree of efficiency in handling and managing these cases on Mr. Mazurek's part. With 1,204.3 hours over five years, Mr. Mazurek expended an average of only 240 hours per year. That level of exceptional efficiency can only be achieved by an attorney who has substantial knowledge, experience and skill in litigating the claims in the cases. The number of hours that Mr. Mazurek spent on these cases reflects a high level of efficiency and ability on Mr. Mazurek's part and is very reasonable.

**Jeremy Heisler** Declaration attached as Exhibit O.

Against this backdrop, the Defendant should be ordered to pay Plaintiffs' attorney fees.[3]

## II.  CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant their Petition for attorney's fees and costs..

                                        Respectfully submitted,

                                        /s/ Edward S. Mazurek
                                        Edward S. Mazurek (PA I.D. No. 50278)
                                        25201 Cornerstone Drive
                                        Yardley, PA 19067
                                        267.243.3393
                                        emazurek@mazureklawfirm.com

                                        Attorney for Plaintiffs

---

[3] Defendant claims that Plaintiffs' counsel was not sufficiently specific in time records to warrant awarding Plaintiffs the fees they owe counsel.  Throughout his 37+ year career, Plaintiffs' counsel was an associate with Baskin, Flaherty, Elliott & Mannino; Saul, Ewing, Remick & Saul; and Morgan, Lewis & Bockius; a Partner in Morgan, Lewis & Bockius, and a solo practitioner.  Throughout his entire career, he has billed clients for time using the same degree of detail as he has used in these cases without criticism or complaint.  Indeed, the legal bills submitted to the Defendant by Cozen & O'Connor (attached as Exhibit N) and the Levin Legal Group (attached as Exhibit P) are consistent with Plaintiffs' counsel's work descriptions.

## **CERTIFICATE OF SERVICE**

I certify that the foregoing filing was serve on counsel for Defendant pursuant to the Court's ECF system.

July 14, 2025                                         /s/ Edward S. Mazurek