**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **REBECCA CARTEE-HARING**<br><br>v.<br><br>**CENTRAL BUCKS SCHOOL DISTRICT,**<br>*Defendant.* | **CIVIL ACTION NO. 20-1995** |
| **DAWN MARINELLO,** *on behalf of herself and similarly situated plaintiffs*,<br>*Plaintiff,*<br><br>v.<br><br>**CENTRAL BUCKS SCHOOL DISTRICT,**<br>*Defendant.* | **CIVIL ACTION NO. 21-2587** |

## MEMORANDUM RE: PARTIES' POST-TRIAL MOTIONS

**Baylson, J.**                                                                     **July 15, 2025**

After nearly five years of extensive motion practice, contentious discovery, evidentiary hearings, and a mistrial, these two consolidated cases have finally attained a judgment. Following a second trial, a unanimous jury found that the Central Bucks School District ("Central Bucks" or "Defendant") violated the Equal Pay Act ("EPA") by paying female teachers Dawn Marinello and Rebecca Cartee-Haring ("Plaintiffs") lower wages than a male teacher performing substantially equal work, and that Defendant did not prove an affirmative defense. The jury awarded Plaintiffs back-pay damages in amounts lower than what Plaintiffs were seeking.

The parties have each filed Rule 50 and Rule 59 post-trial motions: Plaintiffs' Motion for Judgment as a Matter of Law and/or to Modify or Amend Judgment (ECF 469) and Defendant's Motion for Judgment Notwithstanding the Verdict or in the Alternative, for a New Trial (ECF

470).[1]  For the following reasons, the Court will **GRANT IN PART** and **DENY IN PART** Plaintiffs' Motion, and will **DENY** Defendant's Motion.

## I.    RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

As the parties are well versed in these lengthy proceedings, the Court will limit its discussion to those facts and procedural history relevant to these Motions.

### A.    The First Trial

Plaintiffs are both female English teachers in the Central Bucks School District who alleged that they were compensated less than male teachers performing substantially equal work.[2] Rebecca Cartee-Haring filed her Complaint on April 22, 2020, and Dawn Marinello followed with her Complaint, on behalf of herself and a collective of those similarly situated, on June 8, 2021. Both Plaintiffs based their claims exclusively in the federal Equal Pay Act (29 U.S.C. § 206(d)(1)).[3]  Case No. 21-2587, ECF 81; Case No. 20-1995, ECF 26.  The Court subsequently consolidated the two cases on November 23, 2021 for all purposes except trial, ECF 17, and for trial on February 27, 2025, ECF 363.

Following a hearing, the Court "certified" a collective action on August 24, 2022, ECF 54-55, and a five-day trial ensued in July 2024 with over 300 opt-in Plaintiffs.  The jury was unable to reach a verdict, and on July 31, 2024, the Court declared a mistrial.  ECF 305.  The Court refers

---

[1] Consistent with prior opinions, the Court refers to the docket entries in Marinello v. Central Bucks School District, No. 21-2587, unless otherwise indicated.

Defendant also filed a Motion to Alter Judgment (ECF 472) that is addressed in the accompanying Order.  Plaintiffs' Petition for Attorneys' Fees and Costs (ECF 471) will be addressed separately.

[2] Plaintiff Rebecca Cartee-Haring has since left the District.

[3] Though Plaintiff Rebecca Cartee-Haring also alleged violations of Title VII, the Age Discrimination in Employment Act, and the Americans with Disabilities Act in her Third Amended Complaint, those allegations concern a separate issue of Cartee-Haring's alleged termination as lacrosse coach and are unrelated to the core disputes in this trial regarding discriminatory compensation.  On June 11, 2024, the Court dismissed those claims related to lacrosse coaching at summary judgment and only permitted the Equal Pay Act claim to continue.  ECF 167.

to its prior memoranda at ECF 393, 395 and to its memorandum in the related case <u>Jakubik v. Gibson</u>, 25-33, ECF 8, for a comprehensive review of the prior proceedings.

**B.  <u>The Second Trial</u>**

After the first trial ended with a hung jury, the Court set parameters for how the second trial would proceed within the legal bounds of the Equal Pay Act.

1.    The Court *sua sponte* decertified the collective action after hearing copious testimony at the first trial and reviewing the voluminous evidentiary record, finding that further fact development showed Plaintiffs were not similarly situated.  ECF 313; <u>see also</u> <u>Jakubik</u>, ECF 8.  The Court allowed the dismissed Plaintiffs to initiate their own individual lawsuits.  ECF 313.

2.    The Court Ordered Plaintiffs to designate two male comparators who were specific teachers of specific academic subjects whom Plaintiffs alleged were paid more, consistent with what the Equal Pay Act requires to prove a violation.  ECF 326, 331.  At the first trial, Plaintiffs' Counsel had proceeded on an unfounded theory that all "teachers"—including any school professional employee, whether paid more or less—were comparators.

3.    The Court required the parties to calculate the maximum potential damages in strict accordance with the Third Circuit's Model Jury Instructions assuming the two Plaintiffs succeeded in proving liability based on one or two male comparators.  ECF 359.  Plaintiffs calculated back-pay damages for Ms. Cartee-Haring extending back to 2007 and for Ms. Marinello back to 2016, and Defendant refused to calculate damages at all.  ECF 360, 361.

4.    The Court precluded Defendant from presenting evidence to rebut Plaintiffs' damages evidence due to Defendant's refusal to calculate maximum potential damages in accordance with the Court's prior Orders and Third Circuit precedent.   ECF 429, ¶ 2.

5.    At the first trial, Plaintiffs' Counsel attempted to prove an EPA violation based on a disparate treatment theory – that male teachers were "credited" for more prior teaching

experience than the female Plaintiffs for purposes of determining their placement on the District's Salary Scales.  Prior to the second trial, the Court ruled that while it would permit evidence that Plaintiffs were improperly placed on the Salary Scales compared to certain male teachers as factual background, disparate placement on the District's Salary Scales and disparate treatment of Plaintiffs' prior years of teaching experience were not valid theories of liability under the Equal Pay Act, which strictly concerns the differences in compensation; those theories are more appropriate in a Title VII discrimination case.  Id., ¶ 3; ECF 436.

The second trial began on May 5, 2025.  Plaintiffs called seven witnesses:

- **Christina Lang**, a principal at the Unami Middle School in the Central Bucks School District from 2013 to 2018 and formerly a middle school teacher.  Tr. (5/5/2025), ECF 459, at 30:17–31:1.

- **Kevin McDermott**, a social studies teacher who worked at Central Bucks from 1993 to 2024.  Tr. (5/5/2025), ECF 459, at 64:12–15.

- **John Donnelly** (by video deposition), a high school social studies teacher and football coach at Central Bucks from 2010 to the present, and one of Plaintiffs' two designated comparators.  Tr. (5/5/2025), ECF 459, at 80:10–82:4.

- **Rebecca Cartee-Haring**, a high school English teacher at Central Bucks from 2007 to 2024 and one of the two Plaintiffs.  Tr. (5/5/2025), ECF 459, at 118:7–22.

- **Malcolm Mosley**, a high school social studies teacher at Central Bucks for 17 years, and one of Plaintiffs' two designated comparators.  Tr. (5/6/2025), ECF 460, at 56:23–57:7.

- **Dr. Abram Lucabaugh**, a former principal, assistant superintendent, and superintendent at Central Bucks for 20 years.  Tr. (5/6/2025), ECF 460, at 91:14–92:4.

- **Dawn Marinello**, a middle school English teacher at Central Bucks from the 2016–2017

4

school year to the present and one of the two Plaintiffs.  Tr. (5/6/2025), ECF 460, at 107:7–108:15.

Defendant called two witnesses:

- **Dr. Robert Laws** (by video deposition), superintendent at Central Bucks from 1992 to 2012.  Tr. (5/6/2025), ECF 460, at 143:19–20.

- **Lisa Corr**, the Director of Human Resources for Central Bucks from 2022 to the present.  Tr. (5/6/2025), ECF 460, at 183:23–184:9.

After three days of testimony and further deliberations, the jury reached a unanimous verdict on May 8, 2025, finding that Defendant paid Plaintiffs less than one of their comparators, John Donnelly, for substantially equal work and that Defendant did not prove an affirmative defense.  The jury awarded Ms. Marinello $81,000 and Ms. Cartee-Haring $84,000 in backpay damages.

## II.  LEGAL STANDARD

### A.  Rule 50(b) Legal Standard

A post-trial motion for judgment as a matter of law under Rule 50(b) "may be granted 'only if, viewing the evidence in the light most favorable to the nonmovant and giving it the advantage of every fair and reasonable inference, there is insufficient evidence from which a jury reasonably could find liability.'"  Mancini v. Northampton Cnty., 836 F.3d 308, 314 (3d Cir. 2016) (quoting Lightning Lube, Inc. v. Witco Corp., 4 F.3d 1153, 1166 (3d Cir. 1993)).  Where a jury returns a verdict in favor of the plaintiff, a court must "examine the record in a light most favorable to the plaintiff, giving her the benefit of all reasonable inferences, even though contrary inferences might reasonably be drawn."  In re Lemington Home for the Aged, 777 F.3d 620, 626 (3d Cir. 2015) (quoting Dudley v. S. Jersey Metal, Inc., 555 F.2d 96, 101 (3d Cir. 1977)).

5

**B.  Rule 59 Legal Standard**

Rule 59 provides that "[t]he court may, on motion, grant a new trial on all or some of the issues" after a jury trial, Fed. R. Civ. P. 59(a), however, "it should do so only when the great weight of the evidence cuts against the verdict and a miscarriage of justice would result if the verdict were to stand." Leonard v. Stemtech Int'l, Inc., 834 F.3d 376, 386 (3d Cir. 2016) (citation modified). "A district court's power to grant a new trial is limited to ensure that it does not substitute its judgment of the facts and the credibility of the witnesses for that of the jury." Id. (citation modified).

**C.  Equal Pay Act**

To succeed on an EPA claim, a plaintiff "must first establish a prima facie case by demonstrating that employees of the opposite sex were paid differently for performing 'equal work'—work of substantially equal skill, effort and responsibility, under similar working conditions."[4] Stanziale v. Jargowsky, 200 F.3d 101, 107 (3d Cir. 2000). "The burden of *persuasion* then shifts to the *employer* to demonstrate the applicability of one of the four affirmative defenses," id. (emphasis in original), including:  (1) a bona fide seniority system, (2) a merit system, (3) a system which measures earnings by quantity or quality of production, and (4) a differential based on any factor other than sex, 29 U.S.C. § 206(d)(1).

Damages for EPA violations follow the FLSA's damages provision:  "Any employer who violates the provisions of section 206[(d)(1)] … shall be liable to the employee or employees affected in the amount of their unpaid minimum wages … and in an additional equal amount as liquidated damages."  29 U.S.C. § 216(b).

---

[4] Throughout the Opinion, the Court abbreviates "work of substantially equal skill, effort and responsibility, under similar working conditions" as "substantially equal work."

III.    **PLAINTIFFS' RULE 50/RULE 59 MOTION**

A.    **Judgment as a Matter of Law on Comparator Malcolm Mosley**

Plaintiffs asserted at trial that both John Donnelly and Malcolm Mosley were comparators to Plaintiffs – two male teachers who were paid more for performing substantially equal work. The jury, however, found that Malcolm Mosley was not a comparator to Plaintiffs. See Verdict Sheet, ECF 453. Plaintiffs first ask the Court to enter judgment as a matter of law on Ms. Cartee-Haring's claim that she was paid less than Malcolm Mosley for performing substantially equal work in violation of the Equal Pay Act. ECF 469 at 2–7.

In a non-precedential opinion, the Third Circuit held that determining whether two jobs are similarly situated and whether another teacher is a comparator "is a fact issue appropriate for the jury." Heller v. Elizabeth Forward Sch. Dist., 182 F. App'x 91, 95 (3d Cir. 2006) (non-precedential). The jury's finding that Mr. Mosley is not a comparator to Plaintiff Rebecca Cartee-Haring does not go against the weight of trial testimony. See, e.g., Tr. (5/5/2025), ECF 459, at 66:17–67:2 (Mr. Mosley taught Advanced Placement courses in Macroeconomics and Comparative Government and testified how his background in banking provided relevant training for his courses); see also id. at 72:2–10 (school administrators were impressed with his "unique" background, including his experience as "head of investment services" at First Union National Bank which was "very complementary to the aim of teaching [ ] students about finance"). The Court declines to disturb the jury's finding that Mr. Mosley is not a comparator.

B.    **Plaintiffs' Request for a New Trial as a Collective Action**

Plaintiffs request that the Court hold a new trial as a collective action with all the former opt-in Plaintiffs. Plaintiffs argue that the Court's dismissal of the opt-in Plaintiffs after the first trial was procedurally improper because the Court's Order granting final certification of the collective action three years ago on August 24, 2022 (ECF 54–55) was a conclusive determination

7

that cannot be reversed.  ECF 469 at 16–19.

Plaintiffs' argument is without merit – this Court retains discretion to re-evaluate the propriety of proceeding as a collective action when it becomes clear that the plaintiffs are not similarly situated and that such dissimilarity hinders judgment.[5]  Cf. Halle v. W. Penn Allegheny Health Sys. Inc., 842 F.3d 215, 229 (3d Cir. 2016) (commenting that decertified opt-in Plaintiffs "are not bound by any aspect of the judgment" and that after they are dismissed, "opt-in plaintiffs retain[] their own substantive FLSA claims"); see also Reinig v. RBS Citizens, N.A., No. 15-CV-01541, 2023 WL 5497106, at *3 (W.D. Pa. Aug. 25, 2023), amended in part, No. 15-CV-01541, 2024 WL 5443175 (W.D. Pa. Feb. 2, 2024) (decertifying the collective action *after* it was finally certified, holding that "[t]he Court may reconsider its certification decision based on new evidence and developments in the record"); Johnson v. Big Lots Stores, Inc., 561 F. Supp. 2d 567, 578–79 (E.D. La. 2008) (decertifying collective action after a bench trial during which testimony "reveal[ed] substantial variations among the opt-in plaintiffs").

### C.  **Plaintiffs' Requests to Amend the Damages Awards**

Plaintiffs ask the Court to amend the jury's award of damages in several ways.

#### 1.  **The Amount of Backpay**

Plaintiffs contend that they are entitled to additional awards of backpay in line with calculations depicted in two exhibits (PX-14 and PX-15) that purport to show the difference in wages between Plaintiffs and their comparators.[6]  ECF 469 at 7–8.  "A jury's damages award will not be upset so long as there exists sufficient evidence on the record, which if accepted by the jury, would sustain the award."  Thabault v. Chait, 541 F.3d 512, 532 (3d Cir. 2008).  The Court declines

---

[5] The Court refers to its Memorandum in Jakubik, referenced above, for its reasons to decertify the collective action.

[6] PX-14 and PX-15 are amended versions of PX-12 and PX-13.

to disturb the jury's determination of the amount of backpay awarded.

### 2. Years of Backpay

The Court limited Plaintiffs' damages recovery to two years of backpay for non-willful violations of the EPA.  Tr. (5/7/2025), ECF 461, at 3:1–11:21.  The Court rejected Plaintiffs' contention that they are entitled to awards of backpay extending back to their dates of hire. Plaintiffs now argue that was in error because the period of recovery was tolled by the discovery rule and/or by equitable tolling.[7]

The Court denies Plaintiffs' request to award additional years of backpay as inconsistent with the EPA.[8]  29 U.S.C. § 255(a).  While the discovery rule and equitable tolling may permit tolling the statute of limitations for plaintiffs to file suit under the EPA, Plaintiffs have not shown that those principles apply to toll the EPA's damages recovery period.  See Gandy v. Sullivan Cnty., 24 F.3d 861, 865 (6th Cir. 1994) (holding that a plaintiff complaining of a willful violation of the EPA over a ten-year employment period is not barred from filing suit, but "should not be allowed to collect for damages outside the three-year limitations period"); Cox v. Quick & Reilly, Inc., 401 F. Supp. 2d 203, 212 (N.D.N.Y. 2005) (while "[e]ach act that is part of the discriminatory violation that injures the plaintiff is a separate cause of action that starts the statutory period over again," "[a]n employee may be awarded back pay for violations of the EPA, but only for the damages sustained within the limitations period.").  Additionally, even if the discovery rule and/or equitable tolling can toll the EPA's damages recovery period, Plaintiffs did not meet their burden

---

[7] The discovery rule "tolls the limitations period until the plaintiff learns of h[er] cause of action or with reasonable diligence could have done so[.]"  William A. Graham Co. v. Haughey, 646 F.3d 138, 141 (3d Cir. 2011).  Equitable tolling is appropriate if "the defendant has actively misled the plaintiff, if the plaintiff has in some extraordinary way been prevented from asserting h[er] rights, or if the plaintiff has timely asserted h[er] rights mistakenly in the wrong forum."  Miller v. Beneficial Mgmt. Corp., 977 F.2d 834, 845 (3d Cir. 1992) (citation modified).

[8] The Court also denies Plaintiffs' request for judgment as a matter of law that Defendant's violation of the EPA was willful.  ECF 469 at 11–13.

of showing that Defendant concealed the differences in salaries or that the information was not reasonably discoverable. See, e.g., Tr. (5/7/2025), ECF 461, at 5:4–6:14; Tr. (5/5/2025), ECF 459, at 132:10–133:17 (Plaintiff Cartee-Haring testifying as to the accessibility of pay information in the District and the ease in which she located the pay differentials).

### 3. Liquidated Damages

The Court must award Plaintiffs liquidated damages which amount to "an additional equal amount" of the damages' award, 29 U.S.C. § 216(d), but the Court may reduce the amount of liquidated damages "if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the Fair Labor Standards Act of 1938[,]" 29 U.S.C. § 260. "An act is not in good faith where the employer lacks 'an honest intention to ascertain and follow the dictates of the [EPA].'" Sec'y United States Dep't of Lab. v. Nursing Home Care Mgmt. Inc., 128 F.4th 146, 161 (3d Cir. 2025) (quoting Marshall v. Brunner, 668 F.2d 748, 753 (3d Cir. 1982)).

Though the jury found Defendant's EPA violation was not willful, the Court concludes that Defendant did not meet its burden of showing it acted in good faith.[9] See, Souryavong v. Lackawanna Cnty., 872 F.3d 122, 127 (3d Cir. 2017) (affirming the district court's judgment that the defendant's actions were not willful but lacked good faith as a matter of law, stating that "[a] lack of evidence going to good faith is not the same as evidence in support of intentionality."). Accordingly, the Court will grant Plaintiff's request for liquidated damages in full.

---

[9] Take, for example, the testimony of Dr. Abram Lucabaugh, who was a high school principal and involved in Defendant's hiring of John Donnelly, a comparator. Tr. (5/6/2025), ECF 460, at 93:11–14. In response to questions by the Court, Dr. Lucabaugh testified that he had no knowledge of the Equal Pay Act, that the Equal Pay Act was not discussed with him when Mr. Donnelly was hired at a high salary, and that no one discussed the possibility of raising the salaries of existing female teachers to align with Mr. Donnelly's salary. Id. at 103:18–104:22.

### 4. Prejudgment Interest and Compensation for Increased Tax Liability

Plaintiffs' request for pre-judgment interest and additional monetary awards to cover Plaintiffs' tax liability are denied because they are subsumed by the award of liquidated damages.[10] Hodgson v. Wheaton Glass Co., 446 F.2d 527, 535 (3d Cir. 1971) ("If the employee recovers liquidated damages in his suit under § 16(b) such liquidated damages include compensation for the withholding of money."); Marshall v. Bd. of Ed. of Baltimore Cnty., 470 F. Supp. 517, 519 (D. Md. 1979), aff'd sub nom. Marshall v. Bd. of Educ. of Baltimore Cnty., 618 F.2d 101 (4th Cir. 1980) ("[I]n instances in which employees exercise their private enforcement rights under section 16(b) of the Fair Labor Standards Act (29 U.S.C. s 216(b)), prevail, and are awarded back pay and liquidated damages, pre-judgment interest has been generally held not to be available.").

### 5. Front-Pay Compensation

Plaintiffs request that the Court adjust Ms. Marinello's prospective salary to match her comparator, John Donnelly. ECF 469 at 19. Front pay and prospective relief, however, is not a remedy specified in the Equal Pay Act. Third Cir. Model Jury Instructions, 11.3.5 ("[F]ront pay cannot be awarded under the Equal Pay Act."). Plaintiffs' cases in support of its contention are inapposite and do not apply remedies under the Equal Pay Act. Eshelman, 554 F.3d at 440–41 (analyzing equitable remedies in an ADA case); Heller, 182 F. App'x. at 96 (affirming a front pay award under the ADEA because "the District Court has discretion to fashion equitable relief to

---

[10] Plaintiffs cite Eshelman v. Agere Systems, Inc., 554 F.3d 426, 440–41 (3d Cir. 2009) to support their request for prejudgment interest and compensation for increased tax burden. ECF 469 at 13, 15. Though Eshelman's language is broad, referring generally to "antidiscrimination statutes," the Third Circuit's discussion of remedies is limited to remedies under the ADA. Eshelman, 554 F.3d at 441–42 ("We hold that a district court may, pursuant to its **broad equitable powers granted by the ADA**, award a prevailing employee an additional sum of money to compensate for the increased tax burden a back pay award may create." (emphasis added)). The ADA incorporates the remedies provided for in Title VII, and under Title VII, the District Court has power to provide equitable relief. Eshelman, 554 F.3d at 440 n.7 ("The ADA incorporates the remedies provided for in Title VII … [a]ccordingly, we will rely upon Title VII law to analyze the issue presented herein."). Not so with the EPA which has a specific damages provision that contains no provision for equitable relief.

effectuate the purposes of the Title VII statutory scheme").

## IV.    DEFENDANT'S POST-TRIAL MOTIONS

### A.    <u>Motion for Judgment as a Matter of Law or, Alternatively, a New Trial</u>

Defendant asks the Court to enter judgment as a matter of law under Rule 50(b), contending that Plaintiffs did not present sufficient evidence that they performed substantially equal work to their comparators, did not produce admissible evidence that they were paid lower wages than their comparators, and did not average the salaries of all teachers in the District performing substantially equal work, or even average the salaries of their two designated comparators.  ECF 470 at 2–5. Alternatively, Defendant moves for a new trial under Rule 59 on the basis that the Court wrongly excluded evidence of wage data of other male teachers in the District, erroneously admitted Plaintiffs' summary damages charts that were untimely and inadmissible, and mishandled the jury charge process, including by omitting necessary instructions, improperly instructing on others, and providing a prejudicial instruction allowing the jury to reduce the damages award to reach unanimity.  <u>Id.</u> at 5–17.

Because of the overlapping issues, the Court merges its discussion of Defendant's Rule 50 and Rule 59 Motions.

### 1.    Evidence of One Comparator

Defendant's primary contention is that the Court erroneously precluded Defendant from presenting evidence of the average salaries of many other male teachers in the District who earned lower wages than Plaintiffs.  According to Defendant, Plaintiffs' burden is to show that they were paid more as compared to the ***average*** male who performs substantially equal work.  Defendant therefore argues that had jurors been shown exhibits that Plaintiffs had a higher starting salary than the average man hired in those years, the jury "likely would have found that neither Plaintiff had made out a *prima facie* case."  ECF 470-1 at 2–3.

12

As the Court has explained in prior Memoranda, the salaries of male teachers other than Plaintiffs' comparators are irrelevant because, although the Court is aware of no binding precedent from the Third Circuit, Plaintiffs need only present evidence of an EPA violation with respect to one male employee.  See ECF 393, 395; Ryan v. General MacHine Products, 277 F. Supp. 2d 585, 596 (E.D. Pa. 2003) (Baylson, J.) ("[I]n order to prove an EPA claim, a plaintiff need only establish that she was paid differentially because her sex with respect to a single male employee."); Barthelemy v. Moon Area Sch. Dist., No. 16-CV-00542, 2020 WL 1899149, at *13 n.29 (W.D. Pa. Apr. 16, 2020) ("[S]everal District Courts in this Circuit have held that a plaintiff may elect one, single comparator if they so choose."); Dubowsky v. Stern, Lavinthal, Norgaard & Daly, 922 F. Supp. 985, 990–91 (D.N.J. 1996) ("[A] [p]laintiff need not establish a pattern and practice of sex discrimination.  To the contrary, she need only establish that she was paid less than a single male employee for equal work on the basis of sex to prevail on her claim.").[11]

Defendant also contends that it was entitled to name its own male comparators and present the jury evidence of the salaries of men other than Plaintiffs' named comparators to rebut Plaintiffs' prima facie showing.  ECF 470-1 at 8–14 ("The School District has been unable to find a single case holding that a defendant cannot name other comparators[.]").  But Defendant's

---

[11] Defendant string-cites other courts that have followed the Ninth Circuit's holding in Hein v. Oregon College of Education, 718 F.2d 910, 916 (9th Cir. 1983) that "the proper test for establishing a *prima facie* case … is whether the plaintiff is receiving lower wages than the average of wages paid to all employees of the opposite sex performing substantially equal work[.]" ECF 470-1 at 11–12. Hein's rule, however, is not universally adopted among the Circuits. See, e.g., Goodrich v. Int'l Bhd. of Elec. Workers, AFL-CIO, 815 F.2d 1519, 1524 (D.C. Cir. 1987) ("It is now established in this circuit that the plaintiff need not compare herself to all similarly classified male employees, but may choose one or more among those allegedly doing substantially equal work."); Brooks v. United States, 101 Fed. Cl. 340 (2011) ("Defendant believes that this precedent supports its view that merely pointing to a single comparator is insufficient to satisfy plaintiff's prima facie case, particularly when, as here, there are other male employees who earn less than she.  We disagree. … The evidence has plainly demonstrated that plaintiff was paid less than Mr. Propster for equal work.  Plaintiff has therefore met her initial burden, and the burden of proof shifts to defendant to demonstrate an affirmative defense."); U.S. Equal Emp't Opportunity Comm'n v. Md. Ins. Admin., 879 F.3d 114 (4th Cir. 2018) ("An EPA plaintiff is not required to demonstrate that males, as a class, are paid higher wages than females, as a class, but only that there is discrimination in pay against an employee with respect to one employee of the opposite sex.").

argument contravenes the clear text of the EPA which specifies only four affirmative defenses once Plaintiff establishes a wage differential. If Defendant violated the EPA by paying Plaintiffs lower wages than their male comparators for substantially equal work, there is no specified defense that Defendant can rebut by pointing to other instances where it did not violate the EPA. U.S. Equal Emp't Opportunity Comm'n v. Md. Ins. Admin., 879 F.3d 114 (4th Cir. 2018) ("The EPA does not dictate to a plaintiff what comparator she must choose, but requires only that, for the purposes of establishing a prima facie case, she choose a comparator of the opposite sex who performs substantially equal work for greater pay.").

Defendant's argument also runs counter to longstanding Supreme Court and Third Circuit precedent interpreting Congress' intent to provide simplified enforcement of Equal Pay Act violations that differs from Title VII actions. See Corning Glass Works v. Brennan, 417 U.S. 188, 208 (1974) ("The Equal Pay Act is broadly remedial, and it should be construed and applied so as to fulfill the underlying purposes which Congress sought to achieve."). Unlike ADEA and Title VII claims, EPA claims do not follow the McDonell Douglas three-step burden-shifting framework. Stanziale v. Jargowsky, 200 F.3d 101, 107 (3d Cir. 2000). Requiring Plaintiffs to show they were paid less on average than a class of male teachers performing substantially equal work would impose on Plaintiffs a burden of proving discriminatory *intent* – a standard which is soundly rejected in EPA cases. Churchill v. Int'l Bus. Machs., Inc., Nat'l Serv. Div., 759 F. Supp. 1089, 1096 (D.N.J. 1991) ("[T]he Equal Pay Act ... creates a type of strict liability in that no intent to discriminate needs to be demonstrated.").

### 2. Plaintiffs Presented Sufficient Evidence to Show Wage Differentials With Their Comparators For Substantially Equal Work

Plaintiffs presented sufficient evidence to support the jury's verdict that they satisfied their prima facie case.

*Skills, Effort, and Responsibility*:

The jury found that John Donnelly was a comparator to both Plaintiffs. ECF 453, ¶ 2. Defendant objects that this verdict is not sustainable as a matter of law because Mr. Donnelly is a social studies teacher whereas Plaintiffs are English teachers, and Mr. Donnelly is also a football coach. ECF 470, ¶ 2. However, that Mr. Donnelly held another position within the District does not preclude a jury determination that Mr. Donnelly performed substantially equal work. Heller, 182 F. App'x at 95 (holding that "the District Court properly allowed evidence from both sides on the question whether a librarian should be considered similarly situated to plaintiffs under the EPA"). Nor is it determinative to substantial equality that Mr. Donnelly is a social studies teacher, and as English teachers, "[t]he Plaintiffs are legally prohibited from teaching social studies courses[.]" ECF 470, ¶ 2(e); Heller, 182 F. App'x at 95 (3d Cir. 2006) ("[T]he presence of a statute limiting who can teach specific subjects is not determinative for purposes of assessing whether jobs are similarly situated for an EPA claim."). The jury rejected Defendant's arguments and found that John Donnelly performed substantially equal work to Plaintiffs notwithstanding content differences in instruction between social studies and English teachers.

*Wage Disparity*:

Plaintiffs presented to the jury multiple exhibits comparing the salaries of Plaintiffs and their comparators.[12] See, e.g., PX-14, PX-15. Plaintiff Rebecca Cartee-Haring testified that she personally prepared these summary exhibits which list "last name, first name, gender, annual

---

[12] That Plaintiffs elected not to present evidence at trial as to the male teacher James Bunn, whom Plaintiffs had initially designated as a second comparator to Plaintiff Marinello, was Plaintiffs' own risk that the jury would reject Mr. Donnelly as a comparator to Plaintiff Marinello and Ms. Marinello would have no fallback. See ECF 393 at 8 ("Recognizing … that Plaintiffs may have difficulty making a prima facie case with only one comparator if the jury determines that comparator did not perform substantially equal work, the Court required Plaintiffs to supplement their offer of proof with a second comparator for each named Plaintiff."). It is not a basis for granting judgment as a matter of law. ECF 470, ¶ 5.

salary, years in education, years in CBSD, degree description, assignment, and assignment location" by culling the information from publicly accessible data on the Pennsylvania Department of Education's website.  Tr. (5/5/2025), ECF 459, at 131:15–133:17.  The summary charts show wage differentials between both Plaintiffs and comparator John Donnelly.  See PX-14, PX-15.

Defendant renews its objection to reliance on these summary exhibits as inadmissible hearsay.  The Court will again reject Defendant's argument, as—according to Ms. Cartee-Haring's testimony—these exhibits were prepared based on information taken from the Pennsylvania Department of Education website.  See United States v. Iverson, 818 F.3d 1015 (10th Cir. 2016) (holding that the public-records exception to the hearsay rule, Federal Rule of Evidence 803(8) applied to testimony about information taken from a government website, noting "[s]everal courts have ruled that government websites fall within the exception for public records").[13]  Defendant also objects that the exhibits were not timely served and not properly offered as a Rule 1006 summary because Defendant was never provided with the underlying data.  However, as the Court stated on the record, Plaintiffs included the source URL on the exhibit.  With the click of a button, Defendant could have accessed the entire database of information and within minutes could have navigated to the pertinent data.  Plaintiffs therefore presented sufficient evidence of wage disparity.[14]

---

[13] The summary exhibits were also arguably admissible under the residual hearsay exception, Rule 807, for being supported by sufficient guarantees of trustworthiness.  Fed. R. Evid. 807.

[14] Defendant's other evidentiary objections (ECF 470, ¶ 13 and ECF 470-1 at 14) are also without merit.  See Gumbs v. Int'l Harvester, Inc., 718 F.2d 88, 97 (3d Cir. 1983) ("The trial judge has wide discretion to admit or exclude evidence under the provisions of the Federal Rules of Evidence.").  As to Defendant's argument that the Court prohibited relevant evidence on damages by precluding Defendant from rebutting Plaintiffs' damages calculations, ECF 470-1 at 20–21, the Court notes that it sanctioned Defendant after Defendant twice refused its Orders to propose a maximum damages calculation (a number greater than zero) which hindered the Court's efforts to try to settle the Case.  See ECF 429, ¶ 2.

### 3. Improper Jury Instructions

Defendant's assertion that the Court gave misleading instructions and failed to charge the jury on necessary instructions are baseless. The Third Circuit has explained that it has "a hard time concluding that the use of our own model jury instruction can constitute error." United States v. Petersen, 622 F.3d 196, 208 (3d Cir. 2010). The Court's instructions came primarily from the Third Circuit's model jury instructions for EPA cases,[15] including its instruction on the affirmative defense "any factor other than sex," which was read to the jury almost verbatim from the model instruction. Tr. (5/7/2025), ECF 461, at 84:24–85:12. Further, the Court incorporated some of the instructions Defendant contends it did not include but framed it differently than Defendant prefers.[16] Douglas v. Owens, 50 F.3d 1226, 1233 (3d Cir. 1995) ("No litigant has a right to a jury instruction of its choice, or precisely in the manner and words of its own preference."). Other instructions Defendant wishes the Court included—such as scores of instructions relating to Pennsylvania statutory requirements for teacher training and certification—were not included because they were prejudicial and contrary to Heller's holding that "the presence of a statute limiting who can teach specific subjects is not determinative for purposes of assessing whether jobs are similarly situated for an EPA claim."[17] Heller, 182 F. App'x at 94–95.

---

[15] For instance, Defendant claims "[t]he Court gave an instruction about wage differential that was misleading and misstated the law[,]" ECF 470, ¶ 25, but the Court's instruction—quoted in Defendant's Motion—is a word-for-word recitation of the Third Circuit's Model Instruction 11.1.1, ¶¶ 27–32. There are countless other examples that the Court will not expand on here but instead refers the parties to the full set of the Third Circuit's Model Instructions for Sex Discrimination Claims Under the Equal Pay Act.

[16] For instance, Defendant argues that the Court did not instruct the jury that it could not consider step placement in determining damages, ECF 470, ¶ 37. But the Court instructed the jury to only consider the wages (i.e., not step placement) of the Plaintiffs and their comparators, a modified version of Defendant's preferred language. ECF 468 at 6.

[17] Defendant also argues that the Court erred when it instructed the jury that "Congress did not include in the statute that instructional content must be equal" and that "without the word, content, being in the statute, … you have to find that the concept of content is subsumed within the three phrases, skill, effort, and responsibility." Tr. (5/7/2025), ECF 461, at 79:24–80:8. But the Court was merely framing for the jury how to consider Defendant's main contention that content differences between social studies and English precludes a finding of substantially equal work in light of the

Defendant also takes issue with the Court's supplemental instruction encouraging the jury to reach a verdict. ECF 470-1 at 24–26. But the Court did not give the kind of "majority/minority instruction" encouraging the minority jurors to abandon their views that the Third Circuit has viewed with skepticism. United States v. E. Med. Billing, Inc., 230 F.3d 600, 613 (3d Cir. 2000).[18] Indeed, the Court repeatedly instructed that the verdict must be unanimous, see, e.g., Tr. (5/8/2025), ECF 462, at 7:5–8, 8:1–7, and expressly emphasized that its instruction how the jurors should communicate amongst themselves and think deeply about the issues "applies to all eight of you" without distinction or any supposed coercion. Tr. (5/7/2025), ECF 461, at 122:6–9.

### 4. Judgment Notwithstanding the Verdict in the First Trial

Defendant asserts that because the Court found after the first trial that it could not enter judgment as a matter of law that Plaintiffs established a prima facie case under the EPA, Defendant was entitled to judgment notwithstanding the verdict. ECF 470-1 at 26–28. Defendant's position is misleading. In denying Plaintiffs' post-trial Motion after the first trial ended in a mistrial, the Court *rejected* Plaintiffs' request for the Court to override the jury's hung verdict and find that it established a prima facie case. ECF 395 at 11–17. The Court did not intend, as the Court later clarified at the April 22, 2025 hearing, to make any affirmative factual or legal findings concerning Plaintiffs' prima facie case.

### B.  Defendant's Rule 41(b) Motion

The Court denies Defendant's renewed request that judgment be entered for Defendant pursuant to Federal Rule 41.

---

text of the Equal Pay Act. See, e.g., Tr. (5/5/2025), ECF 459, at 25:11–20 (Defendant in its opening framed the "critical fact" in the case as "content knowledge").

[18] See United States v. Fioravanti, 412 F.2d 407, 420 (3d Cir. 1969).

## V.    CONCLUSION

For the foregoing reasons, the Court will **GRANT IN PART** and **DENY IN PART** Plaintiffs' Motion, and will **DENY** Defendant's Motion.

\\adu.dcn\paed\PHL-DATA\Judge_Baylson\CIVIL 20\20-1995 Cartee-Haring v Central Bucks Sch\20cv1995 and 21cv2567 Memo re Post-Trial Motions, Second Trial.docx

19